Lawrence v. Lawrence.

LAWRENCE vs. LAWRENCE.

1. An answer, though responsive, has not the effect of evidence, where the facts are not within the personal knowledge of the defendant. It throws the burden of proof on the complainant, but has no further weight.

2. The question being merely whether the complainant was half owner of certain lands, and entitled to a conveyance of an undivided half thereof the facts of the case held to substantiate complainant's claim.

3. A suit in the nature of a suit for specific performance, requires diligence in performance and in bringing suit. A suit for the declaration of a resulting trust does not require the same diligence.

4. Where two purchase lands, and one takes the title in his own name, but his co-purchaser has paid his whole share of the consideration and has been permitted to possess and enjoy the property, delay in bringing suit for his moiety will not bar relief.

The bill was to compel a conveyance of the undivided half of a number of parcels of land in Monmouth and Ocean counties, by the legatees and executors of James S. Lawrence, deceased. The grounds of the claim were that the lands were purchased by or conveyed to James S. Lawrence, for the

joint benefit of himself and the complainant, and that the complainant advanced the whole or half of the money for the purchase, and that James S. Lawrence always, in his lifetime, acknowledged and treated the complainant as joint owner with him. The answer denies that the lands were purchased by the complainant, or that the money for the purchase was paid by him in whole or in part; but it admits that at or shortly after the time of the purchase, there was an agreement between the complainant and James S. Lawrence, that if the complainant would pay to him one-half of the whole purchase money, which was $175, he would convey to him one-half the lands, but it denied that he had ever paid to James S. Lawrence one-half of the purchase money. Upon this issue a large amount of depositions and documentary evidence was taken and produced on both sides.

The cause was heard upon the pleadings and proofs.

*Mr. W. H. Vredenburgh* and *Mr. J. Parker*, for complainant.

*Mr. J. F. Randolph*, for defendants.

THE CHANCELLOR.

The answer admits and states, that the complainant requested James S. Lawrence to purchase these lands, and to allow him, when he should pay one-half of the purchase money, to become owner of one-half in partnership with him, and that upon such suggestion and request, James S. Lawrence agreed with the complainant to purchase the lands, and that the complainant, when he paid one-half of the purchase money, should become partner with him in the ownership of the lands. But the answer denies that the complainant ever paid the half of the purchase money.

Upon this question of the payment of the purchase money the whole controversy rests. The denial in the answer has not the effect of evidence because, although responsive

to the bill, none of the facts are within the personal knowledge of any of the defendants. It, as pleading, throws the burden of proof upon the complainant, but can have no further weight. Facts sufficient to constitute part performance of such contract are abundantly shown; for years both parties treated these lands as their common property, jointly sold and cut the wood growing on them, and both gave out, together and when apart, that it was their joint property.

Conditions of the auction sale of timber, December 18th, 1848, more than two years after the purchase of the lands, drawn by James S. Lawrence, and signed by him and the complainant, state the sale to be of timber standing on lands *belonging to* the subscribers. This was, as is proved and conceded, timber on the lands in question. A large number of respectable witnesses, whose credibility is not impeached, testify that for years James S. Lawrence treated these lands and spoke of them as belonging to both. Taxes on them were assessed to both, and paid sometimes by one and sometimes by the other. These facts are circumstantial proof, difficult to overcome, that the money had been paid. The memorandum book or diary of James S. Lawrence, is in evidence. In this, on December 18th, 1848, he enters: "Went to sale of timber standing at Obhonnon swamp, sold by J. N. Lawrence and myself; amount of sales $257.56. My three acres and ninety-hundredths, sold with the partnership timber." This is strong evidence that the partnership was consummated and the money paid, or considered as paid by James S. Lawrence. The property was conveyed to him by Helena Lawrence Pennington and her trustees, by deed dated May 19th, 1846. By the ledger of James S. Lawrence, produced and offered in evidence, it appears that on June 19th, 1846, he charged the complainant in these words: "To one-half of the price paid Mrs. Helena Pennington, for her interest in the lands in New Jersey, $87.50." He then charges him with interest on that sum to April 19th, 1848, the date of the account then stated in his ledger. The whole

amount of the debts against the complainant in that account is $303.01, and the amount of credits is $411.17; showing that, by the account as it then stood, there was a balance due from him to the complainant, and that the amount of $87.56 was thus, at that date, paid to him. This was eight months before the auction sale of December 18th, 1848, at which he stated in the written conditions that these lands belonged to both. In this ledger there is at the foot of this account, in the handwriting of James S. Lawrence, this entry: "The above account included in subsequent settlement. James S. Lawrence."

This settlement appears in Exhibit 2, offered by the defendants; this settlement was made to April 1st, 1855, and shows a balance of $1232.71 due to James S. Lawrence, for which a mortgage, dated May 28th, 1855, appears to have been given, and this mortgage is shown to have been satisfied. Now, in the items of this account, the charge of $87.-50, and the interest upon it, does not appear. All the other items in the account of April 19th, 1848, as stated in the ledger, are included in it. From this an inference might arise that this sum was not, after all, paid by the complainant. But the certificate of James S. Lawrence in the ledger, that these items were included in subsequent settlement, is. too strong to be overcome by the negative evidence, supported as the entry is by the conduct and declaration of the parties for years. That debt may, between 1848 and 1855, have been satisfied and paid off by some other dealing not entered into the account in Exhibit 2. The presumption is that after the sales of timber between 1848 and 1855, in the proceeds of which the complainant was allowed to participate to the amount of one-half, the payment which had once been made by the credits in the ledger, would not have been taken back; and if it was taken back, either purposely or by inadvertence, the right to the conveyance having once vested in the complainant by the payment of the money, would not be taken away by the repayment alone, unless made with the declared purpose of rescinding the contract.

There is no evidence of such intention, and it cannot be presumed without proof. I feel compelled to conclude from these entries, and the conduct and declaration of the parties, that the money was paid to James S. Lawrence, and that the complainant is entitled to a conveyance of one-half of the lands included in the deed from Helena Lawrence Pennington and her trustees, to James S. Lawrence.

The lapse of time between the agreement and payment, and the bringing this suit, (being from 1846 to 1863,) and in many cases a tithe of the time, would be sufficient to bar the relief, but for the attending circumstances. This suit is in the nature of a suit for specific performance, which requires diligence on the part of complainant both in performance and in bringing his suit. If it was for the declaration of a resulting trust, such diligence is not required.

But in this case the performance on the part of the complainant was in 1848, when the whole amount was paid by him in the manner above stated and accepted by James S. Lawrence; and the complainant was admitted, during the life of James S. Lawrence, to the full enjoyment and possession of his half of the lands. When the purchaser has paid the whole consideration, and has been permitted to possess and enjoy the property purchased, delay in bringing suit will not bar relief. This was the case in *The New Barbadoes Toll Bridge Co.* v. *Vreeland,* 3 *Green's Ch.* 157, in which relief was not refused after a lapse of twenty-three years, though it was decreed without costs. There the complainants had taken possession of the lands occupied by their turnpike road, which ran across the defendant's farm and by his door, and he had acquiesced in their constructing the road, and used it with the rest of the public during this time. The only object was to obtain the legal title, and the complainants had immediately performed their part of the contract, which was to construct a public turnpike upon the land. In this case the delay cannot bar the relief, as the consideration was paid in full and accepted by James S. Lawrence, and the complainant admitted to full enjoyment of the estate.